IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **CLEAR SPRING PROPERTY AND CASUALTY COMPANY,** | |
| Plaintiff / Counter Defendant, | |
| v. | |
| **ARCH NEMESIS, LLC,** | Case No. 22-2435-DDC-TJJ |
| Defendant / Counter Claimant / Third-Party Plaintiff, | |
| v. | |
| **WEST COAST REAL ESTATE & INSURANCE, INC.,** | |
| Third-Party Defendant / Cross Claimant, | |
| **CONCEPT SPECIAL RISKS, LTD., et al.,** | |
| Third-Party Defendants / Cross Defendants. | |

**MEMORANDUM AND ORDER**

Jury or no jury—that's the question United States Magistrate Judge Teresa J. James answered in her recent Memorandum and Order (Doc. 43). Magistrate Judge James's Order denied plaintiff Clear Spring Property and Casualty Company's Motion to Strike Jury Trial Demand (Doc. 13). She concluded that—in this declaratory action—Clear Spring's right to designate its claims under the court's admiralty jurisdiction and proceed without a jury doesn't trump defendant Arch Nemesis's right to a jury trial on its counterclaims. Doc. 43 at 1–2. And, because of the intertwined nature of Clear Spring's and Arch Nemesis's claims, Magistrate Judge James also determined that the court should try all claims to a jury in a single trial. *Id.* at 20.

Clear Spring objected to the Order and filed a Motion to Review (Doc. 47)—which is before the court now.  The court overrules Clear Spring's objections and affirms Magistrate Judge James's Order, for reasons explained, below.  But first, the court provides a brief overview of the relevant background.

**I.    Background**

The court previously provided a thorough recitation of this case's factual background.  *See* Doc. 42.  The court thus limits the background and procedural facts repeated below to those necessary to address Clear Spring's objections to Magistrate Judge James's Order.

Clear Spring issued an insurance policy to cover Arch Nemesis's yacht from December 2021 to December 2022.  Doc. 1 at 2 (Compl. ¶ 8); Doc. 79 at 24–25 (Def.'s Am. Counterclaims ¶¶ 43, 46).  That yacht sank off the coast of Mexico in May 2022.  Doc. 1 at 2 (Compl. ¶ 7); Doc. 79 at 28 (Def.'s Am. Counterclaims ¶ 64).  Arch Nemesis filed an insurance claim with Clear Spring hoping to recover for its loss.  Doc. 1 at 7 (Compl. ¶ 18); Doc. 79 at 30 (Def.'s Am. Counterclaims ¶ 79).  But, on October 24, 2022, Clear Spring denied the claim, issuing a claim denial letter to Arch Nemesis.  Doc. 1 at 10 (Compl. ¶ 33); Doc. 79 at 33 (Def.'s Am. Counterclaims ¶ 93).  On the same day, Clear Spring filed this declaratory action.  Doc. 1.

Clear Spring's Complaint asks the court to determine the parties' rights under the marine insurance contract.  *Id.* at 1 (Compl. ¶ 1).  It alleges that Arch Nemesis breached various policy warranties—the Recommendations Warranty, the Misrepresentation Provision, the Fire Extinguisher Warranty, the Seaworthiness Warranty, and the Regulations Warranty—as well as the doctrine of Uberrimae Fidei.  *Id.* at 10–17 (Compl. ¶¶ 34–104).  These breaches, Clear Spring contends, preclude coverage and make Arch Nemesis's insurance policy void from inception.  *Id.* at 18 (Compl. Conclusion).  Clear Spring thus asks the court to declare that there is no coverage

for the claim. *Id.* And Clear Spring's Complaint specifies that this "is an admiralty and maritime cause within the meaning of Fed. R. Civ. P. 9(h) and 38(e)." *Id.* at 1 (Compl. ¶ 2).

Arch Nemesis answered, bringing counterclaims for Actual Fraud, Negligent Misrepresentation, Estoppel/Detrimental Reliance, Breach of Contract, Breach of Implied Duty of Good Faith and Fair Dealing, Bad Faith, and Violations—pleaded in the alternative—of various states' deceptive practices acts and insurance codes. Doc. 79 at 39–53 (Def.'s Am. Counterclaims ¶¶ 114–207). Arch Nemesis pleads diversity jurisdiction, explicitly asserting that it "does not designate its counterclaims as admiralty or maritime claims . . . and respectfully requests that all of its counterclaims against Clear Spring be tried to a jury." *Id.* at 16 (Def.'s Am. Counterclaims ¶ 4) (emphasis in original).

In response, Clear Spring filed a Motion to Strike Jury Trial Demand. Doc. 13. Clear Spring argued that it "brought [its] action first and properly invoked the Court's admiralty jurisdiction." *Id.* at 3. And, Clear Spring contended, Arch Nemesis can't undo this choice by asserting a counterclaim. *Id.* In her Memorandum and Order denying Clear Spring's Motion to Strike, Magistrate Judge James concluded that "the mere fact [Clear Spring] won the race to the courthouse and filed its declaratory judgment action first should not deprive [Arch Nemesis] of its constitutional right to a jury trial." Doc. 43 at 20. And so, the Order held "that the entire case should be tried before a jury." *Id.* Clear Spring's Motion to Review followed. Doc. 47. The court turns to that motion, below, after it recites the legal standard governing review of Magistrate Judge James's Order.

## II.     Legal Standard

The district court applies different legal standards to evaluate magistrate judge rulings on dispositive versus non-dispositive matters. *See* Fed. R. Civ. P. 72. "A matter is dispositive if the ruling effectively removes a defense or claim from the case." *Clarendon Nat'l Ins. Co. v.*

3

*Glickauf*, No. 18-CV-02549, 2019 WL 7168657, at *2 (D. Colo. Dec. 23, 2019) (citing *In re Motor Fuel Temperature Sales Practices Litig.*, 261 F.R.D. 577, 579 (D. Kan. 2009)). A party's right to a jury trial is a nondispositive matter. *Walker v. SC Realty Servs., Inc.*, No. 15-CV-9932, 2016 WL 4245487, at *1 n.1 (D. Kan. Aug. 11, 2016) ("[T]he decision whether a party is entitled to a jury trial is not dispositive of a party's claim or defense under Fed. R. Civ. P. 72(b) and a motion to strike jury demand is not one of the motions listed under 28 U.S.C. § 636(b)(1)(A).")[1]; *see also Moreno v. Qwest Corp.*, No. 13-CV-00103, 2013 WL 2444720, at *1 n.1 (D. Colo. June 5, 2013) ("A motion seeking an order to strike a jury demand raises a non-dispositive issue."); *United States v. Carlson*, No. 06-CV-00275, 2006 WL 2869122, at *1 n.1 (D. Colo. Oct. 6, 2006) ("Because consideration of a party's right to a jury trial is not dispositive of a claim or a defense of a party, an Order by the Magistrate Judge, subject to appeal under the clear error standard of Fed. R. Civ. P. 72(a), is appropriate[.]").

When reviewing a magistrate judge's order deciding nondispositive, pretrial matters, the district court applies a "'clearly erroneous or contrary to law'" standard of review. *First Union Mortg. Corp. v. Smith*, 229 F.3d 992, 995 (10th Cir. 2000) (quoting *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1461–62 (10th Cir. 1988)); *see also* 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a). Under the clearly erroneous prong of this standard, a district judge does not review factual findings de novo; instead, it must affirm a magistrate judge's findings unless a review of the entire evidence leaves the district judge "with the definite and firm conviction that a mistake has been committed." *Ocelot Oil Corp.*, 847 F.2d at 1464 (citation and internal

---

[1]   28 U.S.C. § 636(b)(1)(A) lists the pretrial matters which a magistrate judge may not determine. These pretrial matters include "a motion for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or information made by the defendant, to suppress evidence in a criminal case, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action." 28 U.S.C. § 636(b)(1)(A). This same statutory provision also identifies the "clearly erroneous or contrary to law" standard of review for magistrate judge orders.

quotation marks omitted). The clearly erroneous standard is "significantly deferential." *United States v. Gallegos*, 314 F.3d 456, 462 n.3 (10th Cir. 2002) (internal quotation marks and citation omitted). The contrary to law aspect of this standard of review permits a district judge to conduct an independent review of purely legal determinations made by the magistrate judge. *Sprint Commc'ns Co. L.P. v. Vonage Holdings Corp.*, 500 F. Supp. 2d 1290, 1346 (D. Kan. 2007) (citations omitted). A magistrate judge's order is contrary to law if it "fails to apply or misapplies relevant statutes, case law or rules of procedure." *Walker v. Bd. of Cnty. Comm'rs of Sedgwick Cnty.*, No. 09-1316, 2011 WL 2790203, at *2 (D. Kan. July 14, 2011) (citation omitted).

The court thus employs the clearly erroneous or contrary to law standard here to address Clear Spring's objections to Magistrate Judge James's Order.

### III. Analysis

Clear Spring objects to the Order on three grounds. *First*, Clear Spring contends that the Order erroneously applies the law because the Order mischaracterizes the majority rule. Doc. 48 at 4–10. *Second*, Clear Spring argues that the Order errs by relying on a non-admiralty case: *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 510 (1959). Doc. 48 at 10–11. *Third*, Clear Spring asserts that the Order erroneously limits its application to the insurer/insured context and accuses Clear Spring of unseemliness, thus revealing that the Order is outcome-driven. *Id.* at 12–13. The court begins with Clear Spring's first argument: that the Order neglected to follow the true majority position.

#### A. Majority Position

*First*, Clear Spring asserts that Magistrate Judge James's Order erroneously applies the law because it mischaracterizes the "majority view." *Id.* at 10. Magistrate Judge James's Order and Clear Spring's motion proffer different definitions of the majority view. According to the

Order, three circuits (of the five to address the issue) have held that a defendant's jury trial right trumps a plaintiff's admiralty election in a declaratory action. Doc. 43 at 8 ("[T]he majority view of the federal circuit courts of appeal (the Fourth, Eighth, and Ninth Circuits) to consider the issue is that a party's Seventh Amendment right to a jury trial under separate jurisdictional grounds outweighs the plaintiff's Rule 9(h) designation and preference for a bench trial in an admiralty action."). Clear Spring contends, in contrast, that the majority view holds its admiralty election—because it came first—trumps Arch Nemesis's jury trial right. And so, under the rule adopted by a majority of courts, Magistrate Judge James either should have struck Arch Nemesis's jury demand or severed the claims. Doc. 48 at 3 ("[T]he majority rule is either to strike defendant's jury demand for its counterclaim or allow a jury trial on defendant's counterclaim *only* if, using different trier of facts, the parties could prevail on their claims without prejudicing the other party or arriving at inconsistent result[s]."). Clear Spring, too, contends that three out of five circuits hold its position. *Id.* at 9 (concluding that three out of five appellate courts—the Fifth, Eighth, and Eleventh—"would hold that the entire action should be tried to a bench"). Thus, both Magistrate Judge James and Clear Spring purport to align with three out of five circuits and, thereby, the majority.

A close reading reveals that the Eighth Circuit made both lists. And since only five circuits have decided this question, where the Eighth Circuit opinion falls makes all the difference.[2] The debate about the majority view—at least at the circuit level—thus comes down

---

2   The Fourth and Ninth Circuits' authority aligns with Magistrate Judge James's ruling. *See In re Lockheed Martin Corp.*, 503 F.3d 351, 359–60 (4th Cir. 2007) ("In the usual course of events—that is, without the declaratory judgment vehicle—[defendant] would have sued [plaintiff] for breach of the insurance contract. And under the savings-to-suitors clause, [defendant] would have been entitled to a jury trial on that claim. Accordingly, . . . [defendant] cannot lose its right to a jury trial simply because [plaintiff] initiated the declaratory judgment action."); *Wilmington Tr. v. U.S. Dist. Ct. for Dist. Haw.*, 934 F.2d 1026, 1031 (9th Cir. 1991) ("Regardless of whether a claim is cognizable in admiralty, the right to a jury trial on such claim is preserved despite plaintiff's election to proceed in admiralty. This court has

to conflicting interpretations of a single case from the 1980s: *Koch Fuels, Inc. v. Cargo of 13,000 Barrels of No. 2 Oil*, 704 F.2d 1038 (8th Cir. 1983).

In *Koch Fuels*, a shipper initiated an *in rem* action against a barge owner for possession of cargo oil and designated its claim as one sounding in admiralty. *Id.* at 1039. The barge owner then intervened and filed a counterclaim for breach of the charter agreement. *Id.* On the barge owner's motion, the trial court severed the two claims. *Id.* The court held a jury trial on the barge owner's claim, followed by a bench trial on the shipper's claim. *Id.* On appeal, the shipper asserted that the trial court had erred by severing the claims because the shipper had initiated the action under the court's admiralty jurisdiction. *Id.* The Eighth Circuit affirmed the trial court, holding that severing the claims allowed the trial court to preserve both the shipper's right under Rule 9(h) to have its claim tried to the court and the barge owner's right to a jury trial, which "a trial court must, whenever possible, strive to preserve[.]" *Id.* at 1042 (citing *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 510 (1959)).

It's easy to see how *Koch Fuels* made both lists. The Eighth Circuit gave a nod to *Beacon Theatres*'s concern about preserving a defendant's jury trial right in declaratory actions—a concern that informs the Fourth and Ninth Circuit opinions prioritizing a jury trial right over an admiralty election, as discussed more below. But the Eighth Circuit also managed to maintain

---

acknowledged that the non-jury component of admiralty jurisdiction must give way to the seventh amendment.").

The Fifth and the Eleventh Circuits' authority aligns with Clear Spring's objections, though the Eleventh Circuit frames its holding as one required by precedent. *See Harrison v. Flota Mercante Grancolombiana, S.A.*, 577 F.2d 968, 986 (5th Cir. 1978) ("[B]y electing to proceed under 9(h) rather than by invoking diversity jurisdiction, the plaintiff may preclude the defendant from invoking the right to trial by jury which may otherwise exist."); *St. Paul Fire & Marine Ins. Co. v. Lago Canyon, Inc.*, 561 F.3d 1181, 1188 (11th Cir. 2009) ("In this admiralty-Rule 9(h) case, the district court was, as we are, bound by *Harrison* and thus did not err in striking Lago Canyon's demand for a jury trial."). Thus, the score is 2-2. Only the Eighth Circuit's holding in *Koch Fuels* remains up for grabs, and the outcome in that circuit will break the tie.

plaintiff's admiralty election under Rule 9(h), thus lending credence to Clear Spring's argument. In sum, the Eighth Circuit took a middle path.[3] And now, each side wants to use *Koch Fuels* to tip the "majority view" count in its favor.

For the purposes of this Order, though, none of this majority-minority squabbling matters all that much. Even if Clear Spring's view represents the majority of circuits, there's still a circuit split. And, more importantly, the Tenth Circuit hasn't weighed in. Clear Spring's motion itself concedes the Tenth Circuit's silence. Doc. 48 at 4 ("[T]he Order addresses an issue in which there is no controlling Tenth Circuit precedent[.]"). And the motion cites a district court case—not a Tenth Circuit case—when Clear Spring categorizes our Circuit as one adopting the majority view. *Id.* at 9. In sum, this question—does a plaintiff's admiralty designation trump a defendant's jury right in a declaratory action—is an unsettled area of law. *See Clear Spring Prop. & Cas. Co. v. Matador Sportfishing, LLC*, No. 1:21-CV-01581, 2022 WL 888099 at *4 (M.D. Pa. Mar. 24, 2022) ("[T]he interplay between a plaintiff's invocation of admiralty jurisdiction and the potential right to a jury trial on a defendant's counterclaim, especially in the context of an action seeking declaratory relief, remains an unsettled area of the law."). And the Tenth Circuit hasn't had the opportunity yet to establish binding precedent or even suggest guidance.

---

[3] Unfortunately, that middle path isn't available here. Both Clear Spring's and Arch Nemesis's claims turn on whether the insurance policy provides coverage for the yacht's sinking. Given the intertwined nature of these claims, this case can't permit the court to have its cake and eat it, too. Clear Spring's Motion to Strike Jury Trial acknowledged this intertwined nature. Doc. 13 at 3 ("[A]llowing Arch Nemesis a jury trial on its Counterclaims will result in a waste of judicial resources and potentially lead to inconsistent results, as Defendant's Counterclaims require Defendant to prove there is coverage under the relevant policy."). And so did Magistrate Judge James's Order. Doc. 43 at 19–20 ("Plaintiff's declaratory judgment claims and Defendant's counterclaims depend upon whether Defendant's loss is covered by its insurance policy with Plaintiff. Both parties concede that in order to prevail, Plaintiff will need to prove the policy does not cover Defendant's loss and Defendant must prove that Plaintiff's policy covers Defendant's loss. Trying first either Plaintiff's declaratory judgment claims to the court or Defendant's counterclaims to the jury would necessarily prejudice the other by determining the entirety of the issue before the other has its opportunity to litigate in its chosen mode of trial.")

And in "the absence of binding case law providing otherwise, [a magistrate judge's] choice to follow non-binding persuasive authority over other non-binding persuasive authority does not render her Order as legally deficient." *Clarendon*, 2019 WL 7168657, at *5; *see also Branch v. Farmers Ins. Co. of Ariz.*, No. CV 01-922, 2004 WL 7338322, at *2 (D.N.M. Jan. 26, 2004) ("Based on the split of authority on the issue, and with no guiding Tenth Circuit precedent, the Court cannot find that the magistrate judge's order . . . is 'clearly erroneous or contrary to law.'"). Magistrate Judge James found the Fourth and Ninth Circuits' authority more persuasive than the Fifth and Eleventh Circuits' authority. That finding doesn't mean she misapplied case law. *See Walker*, 2011 WL 2790203, at *2 ("A[] [magistrate judge's] order is contrary to law if it fails to apply or misapplies relevant statutes, case law or rules of procedure." (quotation cleaned up)). Nor does it leave this court "with the definite and firm conviction that a mistake has been committed." *Ocelot Oil Corp.*, 847 F.2d at 1464 (citation and internal quotation marks omitted). Instead, the court considers Magistrate Judge James's Order both well-reasoned and clearly aligned with one side of a circuit split. And so, this court overrules Clear Spring's first objection premised on the debated majority view. On to Clear Spring's next objection.

### B. Reliance on *Beacon Theaters*

*Second*, Clear Spring takes issue with Magistrate Judge James's reliance on *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500 (1959). In *Beacon Theatres*, a movie theatre operator brought a declaratory action against a drive-in theatre operator. *Id.* at 502. The movie theatre asked the court to declare that a grant of clearance was reasonable and didn't violate the antitrust laws. A grant of clearance provided the movie theatre with an exclusive right to show "first run" pictures for a period in a given geographical area, by way of contracts with movie distributors. *Id.* at 502–03. The drive-in theatre then brought a counterclaim and demanded a jury trial. *Id.* at 503. The district court viewed the issues raised by the movie theatre's declaratory claim as

9

"essentially equitable" and tried those issues to the court in a bench trial before conducting a jury trial on the counterclaim. *Id.* But the counterclaim dealt with the same issue of clearance as the declaratory claim. Thus, holding a bench trial first effectively confined the drive-in theatre's "opportunity fully to try to a jury every issue which ha[d] a bearing upon its . . . suit." *Id.* at 504 (internal quotation marks and citation omitted). The Supreme Court determined that the movie theatre's use of the Declaratory Judgment Act to sue first shouldn't deprive the drive-in theatre of its right to a jury trial. *Id.* So too, here, Arch Nemesis's argument goes. Arch Nemesis contends it should maintain its jury trial right even though Clear Spring brought a declaratory suit first under admiralty jurisdiction.

Clear Spring disagrees. Clear Spring begins by arguing that *Beacon Theatres* didn't involve admiralty jurisdiction, and so it doesn't apply here. Doc. 48 at 11. And, Clear Spring notes, the Federal Rules of Civil Procedure only included Rule 9(h)'s admiralty designation after *Beacon Theatres*. The Committee Notes accompanying the amendment that added Rule 9(h) demonstrate, Clear Spring contends, that the plaintiff "determines whether to proceed by bench trial or jury trial." *Id.* Had the Committee envisioned limiting plaintiff in light of defendant's jury trial right, it would have accounted for *Beacon Theatres*—and it didn't. *Id.* So, Clear Spring objects to Magistrate Judge James's reliance on *Beacon Theatres*. *Id.*

Here's the problem with Clear Spring's objection: Magistrate Judge James didn't chart a new course when she applied *Beacon Theatres* to an admiralty case. On the contrary, she sailed a well-worn route. To be sure, some courts have held that the *Beacon Theatres* rationale shouldn't apply in admiralty cases. *See ING Grp. v. Stegall*, No. CIVA03-PC-1621, 2004 WL 3178077, at *4 (D. Colo. Sept. 28, 2004) ("*Beacon Theatres* was not a maritime case involving a Rule 9(h) election and is therefore factually distinguishable[.]"). But both the Fourth and Ninth

10

Circuit cases Magistrate Judge James found persuasive explicitly applied *Beacon Theatres* in the context of admiralty election. *See In re Lockheed Martin Corp.*, 503 F.3d 351, 359 (4th Cir. 2007) ("Because the Seventh Amendment is implicated in some admiralty cases (cases where there are claims that may be at law), we believe that the *Beacon Theatres* approach must be applied to such cases."); *Wilmington Tr. v. U.S. Dist. Ct. for Dist. Haw.*, 934 F.2d 1026, 1031–32 (9th Cir. 1991) ("The same concerns expressed by the Court in *Beacon Theatres* exist when parties join admiralty claims with claims to which a right to a jury trial attaches.").[4] And the Eighth Circuit—as already discussed, above—affirmed severing two claims to allow for an admiralty bench trial followed by a jury trial, with a nod to *Beacon Theatres*' rationale. *Koch Fuels*, 704 F.2d at 1042 ("By severing the claims, the trial court preserved both [plaintiff's] right under Rule 9(h) to have its claim tried to the court, and [defendant's] right to have its claim tried to a jury. The court, therefore, exercised its discretion in a manner consistent with the policy of *Beacon Theatres*, and preserved [defendant's] right to a jury trial."). So, relying on *Beacon Theatres* to evaluate the jury trial right in an admiralty claims/counterclaims case is old hat.

As a result, this second theory of error—like the first—doesn't demonstrate that Magistrate Judge James's Order is clearly erroneous or contrary to law. Rather, Magistrate Judge James, in the absence of binding Tenth Circuit precedent, chose to follow one line of non-

---

[4] District courts have followed suit, applying *Beacon Theatres* in the admiralty context when addressing a party's jury trial right. *See, e.g.*, *Cont'l Ins. Co. v. Indus. Terminal & Salvage Co.*, No. 05-CV-1142, 2005 WL 2647950, at *1–2 (W.D. Pa. Oct. 17, 2005) (denying motion to strike jury trial when plaintiff made admiralty election in declaratory judgment action and citing *Beacon Theatres*' holding "that a right to a jury trial should not be lost through a prior determination of equitable claims."); *Canal Barge Co. v. Commonwealth Edison Co.*, No. 98-C-0509, 2002 WL 206054, at *3 (N.D. Ill. Feb. 11, 2002) (determining right to jury trial on defendant's counterclaim not affected by plaintiff's decision to file admiralty claim and explaining that *Beacon Theatres*' guidance to preserve jury trial right whenever possible "applies when parties join non-admiralty claims . . . with admiralty claims."); *Sphere Drake Ins. PLC v. J. Shree Corp.*, 184 F.R.D. 258, 261 (S.D.N.Y. 1999) (explaining, when denying motion to strike jury demand by insurers bringing declaratory judgment action against insured, that "Supreme Court's ruling in *Beacon Theatres* in support of jury determination is both persuasive and compelling" and that denying motion to strike "comports with Supreme Court precedent as enunciated in *Beacon Theatres*.").

11

binding persuasive authority. That choice "does not render her Order as legally deficient." *Clarendon*, 2019 WL 7168657, at *5.

What's more, the author of this Order—like Magistrate Judge James—is persuaded that the rationale of *Beacon Theatres* should apply here. A declaratory action in the admiralty context prompts the same concern about the parties' unusual positions as does a declaratory action in *Beacon Theatres*' antitrust context. 359 U.S. at 504 ("[I]f [defendant] would have been entitled to a jury trial . . . against [plaintiff] it cannot be deprived of that right merely because [plaintiff] took advantage of the availability of declaratory relief to sue [defendant] first.") That is, "in . . . a declaratory judgment action, the normal position of the parties is reversed *St. Paul Fire & Marine Ins. Co. v. Lago Canyon, Inc.*, 561 F.3d 1181, 1198 (11th Cir. 2009) (citation and internal quotation marks omitted) (Wilson, J., concurring). Here, too, the parties' traditional positions are flipped: Arch Nemesis's counterclaims represent "the actual matter in controversy" and Arch Nemesis, as the policy holder, qualifies as "the real plaintiff-in-interest." *Id.* That flipped-parties posture causes concern when it comes to determining a jury trial right. So, "*Beacon Theatres* instructs [courts] to consider how the cause of action would have proceeded in the absence of the declaratory judgment vehicle." *Id.* at 1199. Without such a vehicle, Arch Nemesis would have brought its claims first and would have had the right to try them to a jury. *See* Doc. 43 at 14–15 ("It is undisputed that, if Defendant had filed suit against Plaintiff for breach of the insurance policy on the Arch Nemesis [yacht] before Plaintiff filed its declaratory action, Defendant would have been entitled under the savings to suitors clause to a jury trial on its claims. Defendant should not be denied its jury trial right merely because Plaintiff filed suit first.").

And the particular circumstances of this case further convince the court that it should protect Arch Nemesis's jury trial right here. Clear Spring filed its declaratory judgment action *on the same day* it denied Arch Nemesis's claim for coverage—October 24, 2022. Doc. 1 at 1, 10 (Compl. ¶ 33). As Magistrate Judge James also notes, Clear Spring gave Arch Nemesis no opportunity to sue first. Doc. 43 at 14 n.59. In other words, Clear Spring won the race to the courthouse because Clear Spring started (and finished) the race to the courthouse on the same day it informed Arch Nemesis that there was a dispute. A party's jury trial right shouldn't depend on a race to the courthouse, especially when one party had the opportunity to hear the starting gun well in advance of the other.

In sum, the court isn't persuaded that the admiralty context excuses *Beacon Theatres*' concern with flipped parties in a declaratory action. And so, the court agrees with Magistrate Judge James—and the Fourth, Eighth, and Ninth Circuits. *Beacon Theatres* applies in the admiralty context. The court thus overrules Clear Spring's second objection. Now, the court moves to Clear Spring's final objection.

### C.  Limited to Insurers/Insured Context

*Third*, Clear Spring contends that Magistrate Judge James's Order limits its ruling to the specific context of insurers filing declaratory actions against an insured. Doc. 48 at 12. And it argues that such a limitation is erroneous. *Id.* Clear Spring also takes issue with the Order's purported stance that Clear Spring's admiralty election is unseemly—a stance that allegedly manifests itself in one of the Order's footnotes.[5] *Id.* at 4, 12. These objections, together, point to an inappropriately outcome-driven Order, according to Clear Spring. *Id.*

---

[5] The footnote at issue reads: "Plaintiff's argument is akin to that of the boy who killed his parents and then threw himself on the mercy of the court as an orphan." Doc. 43 at 15–16 n.63. Magistrate Judge James appears to suggest by this comparison that just as the boy has no right to protest as an orphan because his own actions put him in that position, Clear Spring has no right to protest as a suitor. The

13

The court agrees.  Had Magistrate Judge James's Order limited its ruling to insurance companies or implied Clear Spring's admiralty election was unseemly, that might qualify as inappropriate.  While much of the relevant case law springs from the insurer/insured context, nothing in *Beacon Theatres*' rationale limits it to that context.  Indeed, *Beacon Theatres* itself arose in a different context:  a declaratory action brought between business competitors in the antitrust context.  And Clear Spring properly exercised its right under Rules 9(h) and 38(e) to elect admiralty jurisdiction.  So, Clear Spring's election wasn't unseemly.

But this court doesn't read Magistrate Judge James's Order to limit its ruling to insurers or to suggest unseemliness on the part of Clear Spring.  Rather, the Order takes issue with Clear Spring leaning on its rights as a suitor when it guaranteed—by filing this action on the same day it issued its letter denying the claim—that Arch Nemesis couldn't sue first.  *See* Doc. 43 at 17.  And the Order points out that an insurance company could take this approach every time—manipulating the timing of an insured's notification to guarantee the company could file first and preclude the insured from ever getting a jury trial.  *Id.*  The court recognizes this as a valid concern, not an explicit or implicit attack on insurers.  The Order simply highlighted the unique hazards at play when an insurance company holds all the cards about timing, and a jury trial right is at issue.  Nor did Magistrate Judge James's concern about the unique dynamics of the insurer/insured context accuse Clear Spring of unseemliness.  And even if it had, the court can't reject a magistrate judge's order because its tone missed the mark—that doesn't satisfy the clearly erroneous or contrary to law standard.

---

comparison may go too far.  But this comparison is little more than oft-used hyperbole.  Consider, for example, Justices Scalia, Kennedy, Thomas, and Alito's assertion in a joint dissent that sustaining a provision in the Affordable Care Act could allow Congress to make "breathing in and out the basis for federal prescription"—an assertion Justice Ginsberg characterized as "outlandish[][.]"  *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 617 (2012) (Ginsberg, J., concurring).  That is to say, hyperbole employed to make a point isn't unusual and it doesn't affect the court's analysis of Magistrate Judge James's Order.

14

Clear Spring's final objection, therefore, provides no basis to reject Magistrate Judge James's Order under the applicable standard. And so, the court overrules Clear Spring's final objection, as well.

## IV. Conclusion

The court thus overrules all three of Clear Spring's objections to Magistrate Judge James's Memorandum and Order (Doc. 43). *First*, Clear Spring objects that Magistrate Judge James didn't follow majority law. But the clearly erroneous or contrary to law standard doesn't find error when a magistrate judge chooses one persuasive, non-binding line of authority over another, provided that no binding case law exists. And which body of law qualifies as the majority rule isn't even clear here—it looks more like a tie. *Second*, Clear Spring objects that Magistrate Judge James relied on *Beacon Theatres*. Again, given the similar reliance of the Fourth and Ninth Circuits and the absence of binding Tenth Circuit precedent, applying *Beacon Theatres* in an admiralty case isn't clearly erroneous or contrary to law. Indeed, this court concludes that it's proper to rely on *Beacon Theatres* in the admiralty context. *Third*, Clear Spring objects to Magistrate Judge James allegedly limiting her ruling to the insurer/insured context. But the court reads no such limitation in her Order. And so, all of Clear Spring's objections to Magistrate Judge James's Order are overruled.

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiff Clear Spring's objections to the Order are overruled and its Motion to Review (Doc. 47) thus is denied.

**IT IS SO ORDERED.**

**Dated this 22nd day of July, 2024, at Kansas City, Kansas.**

s/ Daniel D. Crabtree
**Daniel D. Crabtree**
**United States District Judge**