## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**CLEAR SPRING PROPERTY AND CASUALTY COMPANY,**

    **Plaintiff / Counter Defendant,**

      **v.**

**ARCH NEMESIS, LLC,**

    **Defendant / Counter Claimant / Third-Party Plaintiff,**

      **v.**

**WEST COAST REAL ESTATE & INSURANCE, INC.,**

    **Third-Party Defendant / Cross Claimant,**

**CONCEPT SPECIAL RISKS, LTD., et al.,**

    **Third-Party Defendants / Cross Defendants.**

**Case No. 22-2435-DDC-TJJ**

## MEMORANDUM AND ORDER

This Order denies third-party defendant Concept Special Risks Ltd.'s attempt to take a second bite from the proverbial apple. The court already has decided—in Doc. 42—that third-party plaintiff Arch Nemesis made a prima facie showing of the court's personal jurisdiction over Concept. But Concept asks the court to revisit the issue in two separate Motions to Dismiss (Doc. 92; Doc. 97). Concept asserts that Arch Nemesis's insufficient service of process meant that Concept wasn't before the court properly when the court issued the previous Order. And so,

Concept now renews its Motion to Dismiss, arguing that the court doesn't possess personal jurisdiction over it for either Arch Nemesis's claims (Doc. 92) or newly asserted cross-claims (Doc. 97; Doc. 98). And Concept requests an evidentiary hearing on the issue.

Two intervening events occurred after the court issued its previous personal jurisdiction Order (Doc. 42) and before Concept filed these motions. Arch Nemesis properly served Concept. Doc. 61. And third-party defendant, West Coast Real Estate & Insurance, Inc., filed cross-claims against Concept and the other third-party defendants. Doc. 90. But neither intervening event upsets the court's ruling on the sufficiency of Concept's minimum contacts with Kansas. Having ruled already, the court declines to revisit the question at the same stage of the litigation. The court thus denies Concept's Motions to Dismiss (Doc. 92; Doc. 97; Doc. 98),[1] and explains its reasons, below.

## I.    Background

The following facts come from Arch Nemesis's Amended Third-Party Complaint (Doc. 78) unless otherwise indicated. The court accepts these facts as true and views them in the light most favorable to Arch Nemesis. *Doe v. Sch. Dist. No. 1*, 970 F.3d 1300, 1304 (10th Cir. 2020) (explaining that on a motion to dismiss the court "accept[s] as true all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to" the party opposing the motion (citation and internal quotation marks omitted)). The court outlined this case's full factual background in its previous Memorandum & Order (Doc. 42). Here, it recites an

---

[1]     Doc. 98 is a Memorandum in Support of Concept's Motion to Dismiss Cross-Claims and Request for an Evidentiary Hearing. It requests the same relief as the Motion to Dismiss Cross-Claims (Doc. 97). And Concept filed the two on the same date. But the court docketed Doc. 98 as its own pending motion. And so, the court rules it here, as well, treating Doc. 97 and Doc. 98 as one Motion to Dismiss and one Request for an Evidentiary Hearing.

abbreviated version—limited by this Order's purpose—which focuses on the relevant parties'

relationships and their respective roles in issuing the insurance policy and denying the claim.

### *Genesis of the Case*

This case began when Arch Nemesis's yacht sank off the coast of Mexico on May 28,

2022. Doc. 78 at 73 (Am. 3d Party Compl. ¶ 88). Arch Nemesis had secured—from plaintiff

Clear Spring Property & Casualty Company—an insurance policy for the yacht in February

2022. *Id.* at 69 (Am. 3d Party Compl. ¶ 67). So, Arch Nemesis submitted a claim to recover for

the lost vessel. *Id.* at 75 (Am. 3d Party Compl. ¶ 103). On October 24, 2022, Clear Spring

denied Arch Nemesis's claim. *Id.* at 79 (Am. 3d Party Compl. ¶ 118). On the same day, Clear

Spring filed this declaratory action, asking the court to determine the parties' rights under the

yacht's insurance contract. Doc. 1 at 1.

### *Parties Involved in Acquiring the Yacht's Insurance Policy*

Arch Nemesis acquired the yacht's insurance policy by working with West Coast, an

insurance broker whose specialties include insuring Americans' property in Mexico. Doc. 78 at

62 (Am. 3d Party Compl. ¶¶ 31, 33). West Coast, in turn, worked with Concept, "an

independent insurance underwriter that was acting as Underwriting Agents for Clear Spring[.]"

*Id.* at 63–64 (Am. 3d Party Compl. ¶ 39) (quotation cleaned up). "Throughout the application

process, Concept requested that Arch Nemesis produce a number of documents" so that Concept

could "determine if a policy for the [v]essel would issue." *Id.* at 64 (Am. 3d Party Compl. ¶ 40).

For example, at one point in the process, West Coast told Arch Nemesis that Concept needed

Arch Nemesis to complete a compliance letter. *Id.* (Am. 3d Party Compl. ¶ 45). Arch Nemesis

submitted Concept's compliance letter to West Coast, along with other forms prominently

displaying the name "Concept Special Risks Ltd." on the top of the documents or in the corner of

them. *Id.* at 64, 67 (Am. 3d Party Compl. ¶¶ 42, 53). These documents also indicated that the

policy acquisition communications involved Kansas residents.  *Id.* at 67 (Am. 3d Party Compl. ¶ 55).

On February 14, 2022, Arch Nemesis received an email from West Coast—with an attached insurance policy.  The email read:  "Congratulations, your Watercraft policy has been issued successfully by Concept Special Risks[.]"  *Id.* at 69–70 (Am. 3d Party Compl. ¶ 70).  The policy identified Clear Spring as Arch Nemesis's insurance provider.  Doc. 1-1 at 2 (Compl. Ex. A).  "Prior to receiving the [p]olicy that West Coast forwarded to it, Arch Nemesis did not know that Clear Spring, as opposed to Concept, would be the insurer."  Doc. 78 at 70 (Am. 3d Party Compl. ¶ 72).

### *The Post-Claim Investigation*

After Arch Nemesis submitted a claim on the policy in May 2022, Clear Spring and Concept enlisted Arnold & Arnold Inc. to adjust the claim.  *Id.* at 75 (Am. 3d Party Compl. ¶¶ 106–07).  Once Arnold had completed its investigation, Clear Spring—through Concept—issued a reservation of rights letter (RoR Letter) to Arch Nemesis.  *Id.* at 77 (Am. 3d Party Compl. ¶ 112).  The letter indicated that the yacht's insurance policy was void from inception and that Arch Nemesis's claim was excluded.  *Id.*  Arch Nemesis responded to the RoR Letter, asserting Clear Spring had acted in bad faith and indicating that Arch Nemesis was prepared to litigate the claim.  *Id.* at 78 (Am. 3d Party Compl. ¶ 116).  The claim's denial—and this declaratory action—followed.  *Id.* at 79 (Am. 3d Party Compl. ¶ 118); Doc. 1 at 1.

Having reviewed the relationships of the parties relevant to the present motions—and their respective roles in this insurance story—the court now addresses Concept's motions, starting with its Motion to Dismiss the Amended Third-Party Complaint.

## II.        Motion to Dismiss Amended Third-Party Complaint (Doc. 92)

Concept renews its earlier Motion to Dismiss (Doc. 15), thus asking the court to revisit its ruling on personal jurisdiction.  Doc. 92 at 5.  According to Concept, it may re-assert this motion now because—due to the court previously finding insufficient service of process—Concept wasn't before the court properly when the previous Order issued.  Doc. 93 at 1.  Arch Nemesis, in response, provides new evidence supporting its personal jurisdiction arguments.  According to Arch Nemesis, these documents and emails from Concept's initial productions "substantiate the Court's earlier assessment of Concept's contacts" with Kansas.  Doc. 110 at 2–3.  Arch Nemesis also contends that Concept's motion here "is nothing more than an improper motion to reconsider" that "should be denied out of hand."  *Id.* at 5.  The court evaluates these arguments, below, beginning with the legal standard applied to a request to revisit a personal jurisdiction ruling.

### A.        Revisiting a Personal Jurisdiction Ruling

A "personal jurisdiction ruling on pleadings and affidavits"—like the one this court already made about Concept—"is essentially a provisional ruling under [Tenth Circuit] precedent[.]"  *Racher v. Lusk*, 674 F. App'x 787, 790 (10th Cir. 2016).  It's merely provisional because "a plaintiff still must prove personal jurisdiction by a preponderance of the evidence by the time of trial[.]"  *Id.*  This provisional nature allows a defendant to renew its objection to personal jurisdiction later in the case.  *Transfirst, LLC v. Brown*, No. 16-CV-03054, 2018 WL 11309221, at *1 (D. Colo. July 6, 2018); *see also* 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1351 (4th ed. 2024) ("A party who has unsuccessfully raised an objection under Rule 12(b)(2) may proceed to trial on the merits without waiving the ability to renew the objection to the court's jurisdiction.")

But Tenth Circuit references to such a renewed objection indicate that it should occur at a later stage in the case, and that it should include new evidence.  *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1069 n.3 (10th Cir. 2008) ("Of course, even if personal jurisdiction is contested and found initially on the pleadings and by affidavit, it may be reviewed again *at subsequent stages* in the trial court proceedings *as evidence accumulates*[.]" (emphasis added)); *see also Arocho v. Nafziger*, 367 F. App'x 942, 950 (10th Cir. 2010) ("Of course, the question of personal jurisdiction can always be revisited *at a post-pleading stage* of the proceedings, where the evidence may show that the relevant facts are other than they have been pled." (emphasis added)).  And other circuits have defined, more explicitly, the requisite delay before renewing a personal jurisdiction objection.  For example, the Eleventh Circuit—in a case that Concept quotes extensively in its motions—outright determined that a court's prima facie ruling on personal jurisdiction necessarily delays any renewed consideration until trial. *AcryliCon USA, LLC v. Silikal GmbH*, 985 F.3d 1350, 1365 (11th Cir. 2021) ("If the district court applies the prima facie standard and denies the motion to dismiss, it is implicitly, if not explicitly, ordering that hearing and determination of the motion to dismiss be deferred until the trial." (quotation cleaned up)); *see also Boit v. Gar-Tec Prods., Inc.*, 967 F.2d 671, 676 (1st Cir. 1992) (same).

## B.      Revisiting a Personal Jurisdiction Ruling Analysis

Here, Concept asks the court to revisit its personal jurisdiction analysis.  But it does so at the same motion-to-dismiss stage where the court already has decided the question once before.  And Concept attaches the same evidence—and only the same evidence[2]—that the court already

---

[2]      Indeed, Arch Nemesis provides the only new evidence on the personal jurisdiction issue.  *See* Doc. 110 at 2–4.  And the court's review of Arch Nemesis's new evidence—secured through Concept's initial productions—confirms the court's provisional ruling that it has personal jurisdiction over Concept. *See* Doc. 42 at 16–17.  The new evidence bolsters Arch Nemesis's assertion that Concept "create[d]

evaluated:  Beric Anthony Usher's Declaration, Doc. 16-1; Doc. 93-1, and the Insurance Policy Contract, Doc. 16-2; Doc. 93-2.  The court already applied the prima facie standard and—considering the pleadings, affidavits, and other written evidence—denied Concept's first Motion to Dismiss (Doc. 15).  *See* Doc. 42.  Because Concept renews its personal jurisdiction challenge at the same stage and with the same evidence, the court declines to reconsider it at this time.

Tenth Circuit precedent appears to counsel the court thus.  *Dudnikov*, 514 F.3d at 1069 n.3 (providing for review of personal jurisdiction analysis "at subsequent stages" and "as evidence accumulates"); *Arocho*, 367 F. App'x at 950 (providing for review of personal jurisdiction analysis "at a post-pleading stage" and when "the evidence may show that the relevant facts are other than they have been pled").  And it makes sense.  Where the evidence hasn't changed and the prima facie burden remains constant, the revisiting court would reach the same result.  To reconsider Concept's personal jurisdiction objection now would waste judicial resources and interfere with the court's Rule 1 mandate to secure a speedy determination of this action.  Fed. R. Civ. P. 1.  And so, the court denies Concept's Motion to Dismiss the Amended Third-Party Complaint (Doc. 92).  The court turns next to Concept's other motion—its Motion to Dismiss Cross-Claims (Doc. 97; Doc. 98).

---

continuing relationships and obligations with citizens" of Kansas.  *Benton v. Cameco Corp.*, 375 F.3d 1070, 1077 (10th Cir. 2004) (internal quotation marks and citation omitted).  For example, email evidence indicates that Concept—not Clear Spring—was the entity required to approve Arch Nemesis's insurance policy.  *See* Doc. 110-4 at 1 (Arch Nemesis Ex. 1-B) (explaining in an email from Concept to Besso that Arch Nemesis's insurance coverage "application form can only be approved by [Concept's] admin team when a firm order to bind is received").  And email evidence also demonstrates that the insurance policy contemplated an ongoing relationship between Arch Nemesis and Concept, who functioned as Arch Nemesis's claims handler and who retained the insurance adjuster for Arch Nemesis's claim.  *See* Doc. 110-7 at 1 (Arch Nemesis Ex. 1-E) (self-identifying in an email from Concept to Dr. McAtee of Arch Nemesis that "Concept Special Risks limited are claims handlers and underwriting agents on behalf of Clear Spring Property and Casualty Company, the Insurer of your Vessel, 'Arch Nemesis'" and explaining that Concept had "referred this matter to Arnold & Arnold for handling").  So, not only does Concept fail to adduce new evidence warranting a new decision, but the evidence from Concept's opponent weakens Concept's position that our court lacks personal jurisdiction over that company.

III.       **Motion to Dismiss Cross-Claims (Doc. 97; Doc. 98)**

The court also denies Concept's Motion to Dismiss Cross-Claims (Doc. 97; Doc. 98).

West Coast asserted a cross-claim for contribution against Concept, alleging that, to the extent

West Coast "is found liable for more than its proportionate share of . . . Arch Nemesis['s]

claimed damages, Concept is liable to . . . West Coast."  Doc. 90 at 37.  Concept, maintaining

that the court doesn't have jurisdiction over it, "denies that it is subject to the cross-claims of

West Coast."  Doc. 97 at 4.  But the court's personal jurisdiction over Concept on Arch

Nemesis's third-party claims—as provisionally determined by the court's previous Order—

enables the court to exercise pendent personal jurisdiction over West Coast's cross-claim, even if

no independent basis for it exists.  The court outlines this ruling below, beginning with the legal

standard for pendent personal jurisdiction.

A.       **Pendent Personal Jurisdiction**

The Tenth Circuit has explained that "the majority of federal district courts and every

circuit court of appeals to address the question have upheld the application of pendent personal

jurisdiction[.]"  *United States v. Botefuhr*, 309 F.3d 1263, 1273 (10th Cir. 2002) (collecting

cases).  And our Circuit has clarified the situations when the district court may apply it.

> Pendent personal jurisdiction, like its better known cousin, supplemental subject
> matter jurisdiction, exists when a court possesses personal jurisdiction over a
> defendant for one claim, lacks an independent basis for personal jurisdiction over
> the defendant for another claim that arises out of the same nucleus of operative fact,
> and then, because it possesses personal jurisdiction over the first claim, asserts
> personal jurisdiction over the second claim. . . . In essence, once a district court has
> personal jurisdiction over a defendant for one claim, it may "piggyback" onto that
> claim other claims over which it lacks personal jurisdiction, provided that all the
> claims arise from the same facts as the claim over which it has proper personal
> jurisdiction.

*Id.* at 1272 (internal citations omitted).  The Circuit assigns application of this rule to the district

court's discretion.  *Id.* at 1273.  And, in that discretion, our court has exercised such jurisdiction

over defendants even apart from any suggestion by the parties that it should do so.  *See, e.g.*, *US Bioservices Corp. v. Lugo*, No. 08-2342, 2008 WL 4747473, at *4 n.2 (D. Kan. Oct. 23, 2008) (Lungstrum, J.) ("The parties have not addressed whether personal jurisdiction over [the defendant] might exist for one claim but not for another.  Regardless, to the extent that such jurisdiction may be lacking with respect to a particular claim, the court in its discretion exercises pendent personal jurisdiction over [the defendant] for all of plaintiffs' claims, in light of the fact that they arise out of the same basic set of facts.").

###### B.    Pendent Personal Jurisdiction Analysis

Here, West Coast's cross-claim for contribution against Concept arises out of the "same basic set of facts" as Arch Nemesis's third-party claims against Concept.  *See Dixie Aire Title Servs., Inc. v. SPW, L.L.C.*, No. CIV-07-0141, 2008 WL 570960, at *4 (W.D. Okla. Feb. 28, 2008) (explaining that defendant's cross-claims for indemnity and contribution "necessarily arise out of the same underlying events" that inform the original claims).  These facts, the court has determined provisionally, involved Concept creating a continuing relationship and obligation with Arch Nemesis, a Kansas citizen.  So, the court may choose to exercise pendent personal jurisdiction here without needing to conduct a separate personal jurisdiction analysis of West Coast's cross-claim.  And it chooses to do so here, in its discretion, because such exercise promotes judicial economy.  The court thus denies Concept's personal jurisdiction objection presented in its Motion to Dismiss Cross-Claims (Doc. 97; Doc. 98).  With that decided, the court turns to Concept's final request—included in both Motions to Dismiss—for an evidentiary hearing on personal jurisdiction.

#### IV.    Rule 12(i) Evidentiary Hearing

Concept also requests an evidentiary hearing on the question of personal jurisdiction. Doc. 92 at 3; Doc. 97 at 3.  It asserts that the court should hold such a hearing "before requiring

Concept to engage in discovery or further defense of this matter." Doc. 97 at 5. The court addresses this final request, beginning—yet again—with the relevant legal standard.

### A.    Evidentiary Hearing Standard

"The district court is given discretion in determining the procedure to employ in considering a motion to dismiss for lack of jurisdiction. Facts regarding jurisdictional questions may be determined by reference to affidavits, by a pretrial evidentiary hearing, or at trial[.]" *Fed. Deposit Ins. Corp. v. Oaklawn Apartments*, 959 F.2d 170, 174 (10th Cir. 1992) (internal quotation marks, citations, and ellipses omitted). "[D]ue process does not require an oral hearing, and a district court has discretion to decide a motion to dismiss without one." *Frischenmeyer v. Werholtz*, 459 F. App'x 759, 761 (10th Cir. 2012). Nor does Fed. R. Civ. P. 12(i) mandate an oral (evidentiary) hearing. Rule 12(i) provides that, if a party moves, it "must be heard" on a Rule 12(b)(1)–(7) defense or Rule 12(c) motion "unless the court orders a deferral until trial." Fed. R. Civ. P. 12(i). But "[b]eing 'heard' does not equate to an evidentiary hearing or oral hearing on [the] motion." *Tracy v. Weber Cnty.*, No. 1:23-CV-90, 2023 WL 6916713, at *1 (D. Utah Oct. 19, 2023) (citing *Greene v. WCI Holdings Corp.*, 136 F.3d 313, 316 (2d Cir. 1998) ("Every circuit to consider the issue has determined that the 'hearing' requirements of Rule 12 and Rule 56 do not mean that an oral hearing is necessary, but only require that a party be given the opportunity to present its views to the court.")).

### B.    Evidentiary Hearing Analysis

Here, no one requested an evidentiary hearing in the first round of personal jurisdiction Motions to Dismiss. *See generally* Doc. 15; Doc. 29. And so, the court already decided the jurisdictional facts based on the briefs and concluded Arch Nemesis had made a prima facie personal jurisdiction showing. Now, Concept wants the court to rewind everything and conduct an evidentiary hearing. The court declines. Concept has had the opportunity to present its views

on personal jurisdiction to the court—twice. And if an oral (evidentiary) hearing isn't necessary on a party's first go-around, it certainly isn't required for a party's attempt to take a second bite from the apple. The court thus denies Concept's request to hold an evidentiary hearing on the question of its personal jurisdiction.

## V.      Conclusion

The court denies Concept's Motion to Dismiss the Amended Third-Party Complaint (Doc. 92). While a party may renew a personal jurisdiction objection as evidence accumulates at a subsequent stage, Concept offers the current motion at the same procedural stage, with the same evidence, and while Arch Nemesis holds the same prima facie burden. And so the result is—predictably—the same. The court also denies Concept's Motion to Dismiss Cross-Claims (Doc. 97; Doc. 98). In the interests of judicial economy, the court exercises pendent personal jurisdiction over West Coast's contribution cross-claim against Concept. Finally, the court denies Concept's request for an evidentiary hearing. The court already decided the personal jurisdiction facts on the briefs before any party requested an oral hearing.

**IT IS THEREFORE ORDERED BY THE COURT THAT** third-party defendant Concept's Motion to Dismiss (Doc. 92) is denied.

**IT IS FURTHER ORDERED THAT** third-party defendant Concept's Motion to Dismiss Cross-Claims (Doc. 97; Doc. 98) is denied.

**IT IS SO ORDERED.**

**Dated this 22nd day of July, 2024, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**

11