UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| CLEAR SPRING PROPERTY AND CASUALTY COMPANY, <br><br> Plaintiff, <br><br> v. <br><br> ARCH NEMESIS, LLC, <br><br> Defendant and Third-Party Plaintiff, <br><br> v. <br><br> CONCEPT SPECIAL RISKS, LTD., et. al, <br><br> Third-Party Defendants. | Case No. 22-cv-2435-DDC-TJJ |

**MEMORANDUM AND ORDER**

This matter is before the Court on Arch Nemesis's Motion to Compel Discovery (ECF No. 176). Pursuant to Fed. R. Civ. P. 37, Arch Nemesis, LLC, ("Arch Nemesis") asks the Court for an order compelling Clear Spring Property and Casualty Company ("Clear Spring") to produce information and documents responsive to Arch Nemesis's second set of discovery requests to Clear Spring, including seven interrogatories and one request for production ("RFP"). Arch Nemesis contends this discovery is relevant to its claims for punitive damages and is appropriate at this stage of the litigation. Clear Spring argues Arch Nemesis did not allege a claim for punitive damages under New York law, the claim for punitive damages is spurious, and the discovery

requested is irrelevant and overbroad.[1] For the reasons discussed below, the Court will grant in part and deny in part Arch Nemesis's motion.

I. **Relevant Background**

From December 2021 through December 2022, Clear Spring maintained an insurance policy covering Arch Nemesis's vessel. During that time, Concept Special Risks Ltd. ("Concept") was acting as Underwriting Agent for Clear Spring. In May 2022, Arch Nemesis's vessel sank, and Arch Nemesis filed an insurance claim with Clear Spring. During the investigation process, Arch Nemesis threatened to sue Clear Spring based on its perceived bad-faith practices.

On October 24, 2022, Clear Spring denied Arch Nemesis's insurance claim and filed its Complaint against Arch Nemesis, asserting seven Declaratory Judgment claims for relief. Specifically, Clear Spring seeks Declaratory Judgment regarding Arch Nemesis's alleged: (1) Breach of the Recommendations Warranty, (2) Breach of the Misrepresentation Provision, (3) Breach of the Doctrine of Uberrimae Fidei, (4) Breach of the Fire Extinguisher Warranty, (5) Breach of the Seaworthiness Warranty, (6) Breach of the Regulations Warranty, and (7) lack of coverage for the claim.

On December 19, 2022, Arch Nemesis filed its Answer, Affirmative Defenses, Counterclaim, and Third Party Complaint[2] alleging the following counterclaims against Clear Spring: (1) Actual Fraud, (2) Negligent Misrepresentation, (3) Estoppel/Detrimental Reliance, (4) Violation of Texas Deceptive Trade Practices Act, (5) Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, (6) Violation of the Illinois Consumer Fraud and Deceptive

---

[1] Clear Spring raised a laundry list of additional boilerplate objections in response to the disputed discovery requests but provided no substantive support for those objections in its response. The Court does not find any of those objections persuasive and overrules them.

[2] ECF No. 11.

Business Practices Act—Unfair Conduct Claim, (7) Violation of Section 155 of the Illinois Insurance Code, (8) Breach of Contract, (9) Breach of the Implied Duty of Good Faith and Fair Dealing, (10) Bad Faith, (11) Breach of Texas Insurance Code: Unfair Settlement Practice. Counterclaims 5-11 are pled in the alternative.

The parties made reasonable efforts to confer as required by D. Kan. Rule 37.2, and on July 29, 2024, the Court held a discovery conference to discuss the parties' identified discovery disputes. The Court provided its guidance on those disputes and directed the parties to continue conferring in good faith to see if they could reach an agreed resolution. On August 2, 2024, Arch Nemesis filed its Motion to Compel, and it is now fully briefed.

## II. Requested Discovery

Arch Nemesis seeks to compel Clear Spring to provide further responses or produce documents responsive to eight discovery requests. Arch Nemesis states these requests were "designed to capture evidence relating to the broad impact of Clear Spring's improper marine insurance practices 'directed at the public generally.'"[3] Interrogatory Nos. 9-12 request information related to marine insurance policies Concept underwrote for Clear Spring. Interrogatory No. 9 requests the total number of marine insurance policies, Interrogatory No. 10 requests the total dollar amount of premiums generated, Interrogatory No. 11 requests the total number of claims filed, and Interrogatory No. 12 requests the total number of claim denials.

Interrogatory Nos. 13, 14, and 17 request information related to lawsuits filed by or against Clear Spring regarding marine insurance policies throughout the time Concept underwrote policies for Clear Spring. Interrogatory No. 13 requests the number of lawsuits Clear Spring has filed

---

[3] ECF No. 176.

against insureds on marine insurance policies. Interrogatory No. 14 requests information regarding the amount of default judgments Clear Spring has obtained against insureds. Interrogatory No. 17 requests Clear Spring list out every case, including the forum, case number, and disposition of the case, that Clear Spring is or has been in with an insured who made a claim on a marine insurance policy Concept underwrote for Clear Spring while Concept served as Clear Spring's underwriting agent, regardless of who filed the lawsuit.

Request for Production No. 13 asks Clear Spring to produce all documents relating to Concept no longer serving as Clear Spring's underwriting agent and/or claims manager.

### III.     Legal Standards

Federal Rule of Civil Procedure 37(a)(3)(B) permits a party seeking discovery to move for an order compelling an answer, designation, production, or inspection. The motion may be made if a party fails to produce documents as requested under Rule 34.[4] An evasive or incomplete disclosure, answer, or response is treated as a failure to disclose, answer, or respond.[5] The party filing the motion to compel need only file the motion and draw the court's attention to the relief sought.[6] At that point, the burden is on the nonmoving party to support its objections with specificity and, where appropriate, with reference to affidavits and other evidence.[7]

Federal Rule of Civil Procedure 26(b)(1) sets out the general scope of discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the

---

[4] Fed. R. Civ. P. 37(a)(3)(B)(iv).

[5] Fed. R. Civ. P. 37(a)(4).

[6] *Williams v. Sprint/United Mgmt. Co.*, No. 03-2200-JWL, 2005 WL 731070, at *4 (D. Kan. Mar. 30, 2005).

[7] *Id.*

>parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

The information sought must be nonprivileged, relevant, and proportional to the needs of the case to be discoverable.[8]

For discovery purposes, relevance is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on" any party's claim or defense.[9] Relevance is often apparent on the face of the discovery request and often dictates which party bears the burden of showing either relevancy or the lack thereof. If the discovery sought appears relevant, the party resisting discovery has the burden to establish the lack of relevancy by demonstrating that the requested discovery (1) does not come within the scope of relevancy as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevancy that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.[10] Conversely, when the relevancy of the discovery request is not readily apparent on its face, the party seeking the discovery has the burden to show the relevancy of the request.[11] Relevancy determinations are generally made on a case-by-case basis.[12]

---

[8] *No Spill, LLC v. Scepter Candada, Inc.*, No. 2:18-CV-2681-HLT-KGG, 2021 WL 5906042, at *3 (D. Kan. Dec. 14, 2021).

[9] *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

[10] *Brecek & Young Advisors, Inc. v. Lloyds of London Syndicate 2003*, No. 09-CV-2516-JAR, 2011 WL 765882, at *3 (D. Kan. Feb. 25, 2011).

[11] *Id.*

[12] *Id.*

IV.     **Analysis**

**A. Arch Nemesis's Claim for Punitive Damages is not Spurious**

Clear Spring argues Arch Nemesis's claim for punitive damages under New York law is spurious and therefore the Court should deny the motion to compel discovery related to the punitive damages claim as irrelevant. Arch Nemesis argues its claim for punitive damages is not spurious.

When a federal court sits in diversity jurisdiction, federal law governs the scope of discovery.[13] A party seeking discovery of an opposing party's financial condition in support of a claim for punitive damages must show the claim is not spurious.[14] However, here, Arch Nemesis has agreed Clear Spring does "not need to provide any financial information related to Arch Nemesis's punitive damages theory until after dispositive motions [have] been decided."[15] Neither party has provided authority indicating a party must show a claim for punitive damages is not spurious to seek all discovery related to punitive damages, not just a party's financial condition. However, even if this standard applies to all discovery related to punitive damages, this Court finds that Arch Nemesis's claim for punitive damages is not spurious.

---

[13] *Stormont-Vail Healthcare, Inc. v. BioMedix Vascular Sols., Inc.*, No. 11-4093-SAC, 2012 WL 884926, at *1 (D. Kan. Mar. 14, 2012) ("Absent any conflicting constitutional requirements, federal statutes or Federal Rules of Civil Procedure, a federal district court sitting in diversity applies federal procedural law and state substantive law.").

[14] *See Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*, No. 05-2164-MLB-DWB, 2007 WL 950282, at *13 (D. Kan. Mar. 26, 2007) ("[T]he Court need only find that the claims for punitive damages are not spurious for discovery [of the defendants' financial information] to proceed."); *Mid Continent Cabinetry, Inc. v. George Koch Sons, Inc.*, 130 F.R.D. 149, 152 (D. Kan. 1990) ("The court finds that it is sufficient for plaintiffs to show that his claim for punitive damages is not spurious in order to be entitled to discovery of defendant's financial condition.").

[15] ECF No. 176 at 4.

To prove a claim is not spurious, a party must provide specific factual allegations to support its claim for punitive damages.[16] In determining whether Arch Nemesis's punitive damages claim is spurious, the Court looks to whether Arch Nemesis has made sufficient allegations—short of those needed to establish a *prima facie* case—to support a claim for punitive damages under the applicable law.[17] In this case, Arch Nemesis contends it is seeking punitive damages based upon Actual Fraud (Counterclaim Count I), and, even if it has not alleged a non-spurious claim for punitive damages based upon Fraud, it has alleged a non-spurious claim for punitive damages based upon Clear Spring's breach of the covenant of good faith and fair dealing (Counterclaim Count IX). Clear Spring argues Arch Nemesis has not sufficiently alleged an independent tort under New York law on which punitive damages must be alleged.

---

[16] *Gust v. Wireless Vision, L.L.C.*, No. 15-2646-KHV, 2015 WL 9462078, at *5 (D. Kan. Dec. 24, 2015*)*; *See also McCloud v. Bd. of Geary Cty. Comm'rs*, No. 06-1002-MLB-DWB, 2008 WL 1743444, at *4 (D. Kan. Apr. 11, 2008) (finding plaintiffs provided sufficient factual background to establish that their claim for punitive damages was not spurious); *Heartland*, 2007 WL 950282, at *13 (finding plaintiff made allegations sufficient to support its punitive damages claims).

[17] As a preliminary matter, the Court will apply New York law for the purposes of determining whether Arch Nemesis has sufficiently pled a claim for punitive damages. Clear Spring argues in its opposition brief that Arch Nemesis fails to plead a claim for punitive damages under New York law because Arch Nemesis specifically states New York law does not apply in its Counterclaim. At the same time, however, Clear Spring argues New York law applies to all claims in this case. And, while Arch Nemesis does not concede that New York law applies to its claim for punitive damages, for the purposes of the motion, it argues that even presuming, as Clear Spring contends, that New York law applies, its claim for punitive damages under New York law is not spurious and its discovery requests are relevant to a claim for punitive damages under New York law. As explained further in this Order, Arch Nemesis clearly alleges punitive damages in its Counterclaim, and Clear Spring cannot successfully argue in opposition to the motion to compel both that New York law *does* and *does not* apply to Arch Nemesis's claim for punitive damages. Therefore, for the purposes of determining whether Arch Nemesis has pled a punitive damages claim, the Court applies New York law.

Clear Spring argues a fraud claim is not actionable when it shares common facts with a contract claim.[18] Arch Nemesis argues a fraud claim remains cognizable if it is based on "a misrepresentation of present facts [and not] a misrepresentation of future intent to perform under the contract."[19] Additionally, Arch Nemesis argues it suffered "special damages . . . that are unrecoverable as contract damages," which is also a basis for allowing a fraud claim in a case like this.[20]

Specifically, Arch Nemesis alleges Clear Spring has committed fraud by issuing a marine insurance policy to Arch Nemesis knowing it had not met the requirements to be covered under the policy. Arch Nemesis argues its fraud claim remains cognizable because Clear Spring represented that the Policy covered the vessel not only on the day that it was issued but also in the months leading up to that point, when in fact the vessel was never covered at any time, constituting a "misrepresentation of present facts" sufficient to keep its fraud claim alive. Further, Arch Nemesis argues it alleges special damages in the form of reliance damages, which are not recoverable as contract damages, and its fraud claim should therefore remain on that basis as well. In ruling on the discovery motion before it, this Court need not decide whether Arch Nemesis's fraud claim will survive a dispositive motion. This Court must only determine whether Arch

---

[18] *Genovese v. State Farm Mut. Auto. Ins. Co.*, 965 N.Y.S.2d 577 (2013) ("A cause of action premised upon fraud cannot lie where it is based on the same allegations as a cause of action alleging breach of contract.").

[19] ECF No. 189 at 2; *Gosmile v. Levine*, 916 N.Y.S.2d 521, 524 (2010).

[20] ECF No. 189 at 2; *Javier v. Beck*, No. 13-cv-2926, 2014 WL 3058456, at *11 (S.D.N.Y. July 3, 2014) ("Rather, to state a fraud claim co-existent with an alleged breach of contract, Plaintiff must: (i) demonstrate a legal duty separate from the duty to perform under the contract; (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract; or (iii) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages.").

Nemesis has met the low standard for a non-spurious punitive damages claim. The Court finds Arch Nemesis has alleged an independent tort (fraud) that may arguably be alleged alongside its breach of contract claim.

Further, Arch Nemesis has sufficiently alleged a punitive damages claim by alleging Clear Spring's conduct was "directed at the public generally." Arch Nemesis claims punitive damages based upon Clear Spring's alleged practice of issuing policies while being aware that the Recommendations Warranty had not been met and would serve as the basis for denial of an insured's claim. Arch Nemesis claims it has already found at least ten other cases where Clear Spring attempted to avoid covering a loss based, at least in part, on the Recommendations Warranty, and Clear Spring uses a standard application form which does not mention anything about having to complete survey recommendations before an issued policy actually offers coverage.[21] Based upon these allegations, the Court finds Arch Nemesis has made a sufficient showing to establish its punitive damages claim is not spurious, and, therefore, can request discovery related to punitive damages.

### B. European Union and United Kingdom Privacy Law

Clear Spring argues it should not have to produce information about marine insurance policies Concept underwrote for Clear Spring or information about lawsuits filed by Clear Spring

---

[21] *See Rocanova v. Equitable Life Assur. Soc. of U.S.*, 83 N.Y.2d 603, 613, 634 N.E.2d 940, 943–44 (1994) ("Punitive damages are available where the conduct constituting, accompanying, or associated with the breach of contract is first actionable as an independent tort for which compensatory damages are ordinarily available, and is sufficiently egregious under the Walker standard to warrant the additional imposition of exemplary damages. Thus, a private party seeking to recover punitive damages must not only demonstrate egregious tortious conduct by which he or she was aggrieved, but also that such conduct was part of a pattern of similar conduct directed at the public generally.").

against insureds because it is personal data protected from disclosure under European Union ("EU") and United Kingdom ("UK") Privacy law, the General Data Protection Regulation ("GDPR") and the Data Protection Act ("DPA"). Arch Nemesis argues foreign privacy laws do not limit the disclosure of aggregate data as requested in its second set of discovery requests.

The Court agrees and finds that the GDPR and DPA do not apply to the information requested by Arch Nemesis in its second set of discovery requests. The GDPR and DPA regulate the processing and dissemination of personal information and data. The GDPR broadly defines personal data as "any information relating to an identified or identifiable natural person."[22] Generally, foreign law "do[es] not deprive an American court of the power to order a party subject to its jurisdiction to produce evidence even though the act of production may violate that [foreign law]."[23] "Thus, when other courts that have considered whether the GDPR excuses noncompliance with the discovery requirements embodied in the Federal Rules of Civil Procedure, they have found that simply invoking the GDPR does not excuse a party from its discovery obligations."[24]

Here, Clear Spring has merely invoked protection under the GDPR without citing any case law which supports finding aggregate data regarding claims or lawsuits filed by insureds or Clear Spring constitutes personal data. Clear Spring argues "providing an assured's name in the title of a lawsuit filed by Clear Spring against the assured *potentially* violates the GDPR and DPA," but does not provide any citation to case law to support its statement. Arch Nemesis, through its second

---

[22] GDPR Article 4(1).

[23] *Société Nationale Industrielle Aerospatiale v. U.S. Dist. Ct. for S. Dist. of Iowa*, 482 U.S. 522, 544 n.29 (1987).

[24] *Arigna Tech. Ltd. v. Nissan Motor Co., Ltd.*, No. 2:22-CV-00126-JRG-RSP, 2022 WL 3020136, at *1 (E.D. Tex. July 29, 2022).

10

set of discovery requests, is not requesting any information relating to an identified or identifiable natural person, only general data which in no way jeopardizes the privacy of any UK or EU citizen's privacy. Clear Spring, as the party relying on foreign law, has the burden of showing such law bars disclosure of the requested information.[25] At this point, Clear Spring has not met that burden to show any of this information could be covered by the GDPR or DPA.

### C. Interrogatory Nos. 9-12[26]

Clear Spring argues information related to marine insurance policies Concept underwrote for Clear Spring is not relevant to Arch Nemesis's claim on its specific policy and the interrogatories are overbroad and unduly burdensome. Arch Nemesis argues this information is relevant to its claim for punitive damages and argues it merely requests Clear Spring provide a single number for each Interrogatory, which cannot be found to be unduly burdensome.

When discovery appears relevant on its face, the party resisting the discovery has the burden to establish facts justifying its objections by demonstrating that the requested discovery (1) does not come within the scope of relevance as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.[27]

---

[25] *AstraZeneca LP v. Breath Ltd.*, No. 08-1512 (RMB) (AMD), 2011 WL 1421800, at *11 (D.N.J. Mar. 31, 2011).

[26] As summarized above, Interrogatory Nos. 9-12 request information related to marine insurance policies Concept underwrote for Clear Spring. Interrogatory No. 9 requests the total number of marine insurance policies, Interrogatory No. 10 requests the total dollar amount of premiums, Interrogatory No. 11 requests the total number of claims, and Interrogatory No. 12 requests the total number of claim denials.

[27] *Owens v. Sprint/United Mgmt. Co.*, 221 F.R.D. 649, 652 (D. Kan. 2004).

In this case, the Court finds Interrogatory Nos. 9-12 appear facially relevant to Arch Nemesis's claim for punitive damages in that they seek information regarding marine insurance policies Concept underwrote for Clear Spring in the time period Concept underwrote marine insurance policies for Clear Spring, to determine the extent to which there is a pattern amongst insureds in how Clear Spring issued policies. Clear Spring, as the party resisting the requested discovery, thus has the burden of justifying their relevancy objections.[28] Clear Spring argues information regarding other insureds cannot be relevant to Arch Nemesis's claims in this case. The interrogatories in dispute ask Clear Spring the total number of marine insurance policies underwritten, the total dollar amount of premiums generated, the total number of claims made, and the total number of claim denials.

Clear Spring argues, "an insurer's conduct as to other claims is not relevant to the claim at hand," citing *Cunningham v. Standard Fire Ins. Co.*, a District of Colorado case, and *Stewart v. Brotherhood Mutual Ins. Company*, a Northern District of Oklahoma case.[29] First, these cases from other districts are not binding on this Court.[30] Second, the facts in those cases are distinguishable from the facts in this case, as the cited cases were not seeking discovery to support a punitive damages claim but were seeking the discovery to show whether the insurer's conduct was reasonable. That the insurer's conduct relative to other claims was not relevant to the claims in

---

[28] *Id.*

[29] ECF No. 184 at 6–7; Case no. 07-cv-02538-REB-KLM, 2008 WL 2668301, *2 (D. Colo. July 1, 2008); Case no. 16-cv-488-JED-FHM, 2017 WL 3951605, *2 (N.D. Okla. Sept. 8, 2017).

[30] *Garcia v. Tyson Foods, Inc.*, 534 F.3d 1320, 1329 (10th Cir. 2008) (quoting *Bank of Am., N.A. v. Moglia*, 330 F.3d 942, 949 (7th Cir. 2003)) (a district court decision is not binding on another district court and "cannot be treated as authoritative on issues of law").

those cases does not dictate that the same is true in this case. Therefore, Clear Spring has not met its burden to justify its objections based on relevancy and they are overruled.

Clear Spring further argues that even if the requests were relevant, discovery related to the marine insurance policies Concept underwrote for Clear Spring are fatally overbroad. In support, Clear Spring merely states, "it defies belief that *ALL* policies, *ALL* claims, *ALL* premiums, and *ALL* denials are relevant to this lawsuit. It is unclear why a claim denial based on a party's failure to pay a premium or an accident involving 'marine life' would be relevant to any of the claims in this matter."[31] Clear Spring does not elaborate as to why it defies belief or provide any further argument.

The Court finds the disputed interrogatories are not overbroad, with the exception of Interrogatory Nos. 10 and 12. Arch Nemesis is not seeking information on all claims, policies, premiums, and denials. Arch Nemesis is seeking information regarding marine insurance policies that were issued in a one-year time period when Concept underwrote policies for Clear Spring, which the Court finds is a sufficiently limited time frame from which to request information. The interrogatories are also limited to marine insurance claims, which the Court finds to be a further sufficient limitation. However, the Court finds the interrogatory asking for the total number of premiums generated from the marine insurance policies Concept underwrote is overbroad. It is not clear how the total number of premiums would be relevant to the policy at issue or punitive damages, and therefore, the Court will deny the motion to compel with respect to Interrogatory No. 10. Further, the Court finds all denials of marine insurance policy claims, as sought by Interrogatory No. 12, are not relevant to the policy and punitive damages claim at issue in this

---

[31] ECF No. 184 at 7.

case. The request for all denials during this time period may encompass a substantial number of denials irrelevant to the Recommendations Warranty. Thus, the Court will limit Interrogatory No. 12 to denials "based, at least in part, on an insured's alleged failure to meet the recommendations provision in a policy."[32]

Therefore, Arch Nemesis's motion to compel is granted as it pertains to Interrogatory Nos. 9, 11, and 12, subject to the above limitation on Interrogatory No. 12, and denied with respect to Interrogatory No. 10.

### D. Interrogatory Nos. 13, 14, and 17[33]

Clear Spring argues the Court should deny Arch Nemesis's motion to compel Interrogatory Nos. 13, 14, and 17 because declaratory relief actions filed by an insurer do not and cannot support a punitive damages claim under New York law. Arch Nemesis argues other declaratory judgment lawsuits against insureds are relevant to its punitive damages theory.

The Court finds Interrogatory Nos. 13, 14, and 17 appear facially relevant to Arch Nemesis's claim for punitive damages in that they seek information regarding other lawsuits filed by Clear Spring that are similar to this lawsuit which may show whether Clear Spring has engaged in a pattern or practice of conduct directed at the public generally. Again, Clear Spring, as the party

---

[32] ECF No. 176 at 2.

[33] As summarized above, Interrogatory Nos. 13, 14, and 17 request information related to declaratory judgment lawsuits filed by Clear Spring regarding marine insurance policies throughout the time Concept underwrote policies for Clear Spring. Interrogatory No. 13 requests the number of lawsuits Clear Spring has filed against insureds on marine insurance policies. Interrogatory No. 14 requests information regarding the amount of default judgments Clear Spring has obtained against insureds. Interrogatory No. 17 requests Clear Spring list out every case, including the forum, case number, and disposition of the case, that Clear Spring is or has been in with an insured who made a claim on a marine insurance policy Concept underwrote for Clear Spring while Concept served as Clear Spring's underwriting agent, regardless of who filed the lawsuit.

resisting the requested discovery, has the burden of justifying its relevancy objections. Clear Spring argues information regarding other declaratory judgment actions cannot be relevant to Arch Nemesis's claims in this case.

Clear Spring argues "declaratory relief actions filed by an insurer do not and cannot support punitive damages under New York law. Filing a declaratory judgment action does not support egregious conduct." Clear Spring cites multiple cases that it alleges support its argument that filing a declaratory judgment action does not prove the party has engaged in egregious conduct.[34] In this case, unlike the cited cases, Arch Nemesis is seeking punitive damages based upon an alleged pattern by Clear Spring toward the public where Clear Spring issues policies knowing the Recommendations Warranty has not been met during the application process and proceeds to deny claims based on the insured's failure to meet the requirements in the Recommendations Warranty. Arch Nemesis is not seeking to use the mere fact that declaratory relief was sought in these cases to support its claim for punitive damages, as the courts refer to in the cited cases, but that Clear Spring has engaged in a similar manner with other insureds as it allegedly has in this case. The Court finds Clear Spring has not met its burden to justify its objections to Interrogatory Nos. 13, 14, and 17, based on relevancy.

While Clear Spring does not argue in its response brief that these interrogatories are overbroad, the Court finds Interrogatory Nos. 13, 14, and 17 are overbroad as written. Every declaratory judgment action, default judgment, and case during the past five years may encompass many responses irrelevant to the limited issue in this case involving lawsuits based on claims

---

[34] *Lang v. Hanover Ins. Co.*, 3 N.Y.3d 350, 356 (2004); *Great Lakes Reinsurance (UK) SE v. Herzig*, Case No. 16-cv-9848-PGG, 2019 WL 4600939, *5 (S.D.N.Y. Sept. 23, 2019); *Paul Revere Life Ins. Co. v. DiBari*, Case No. 3:08-cv-1795-JBA, 2010 WL 918084, *5 (D. Conn. Mar. 11, 2010); *Stratford Ins. Co. v. Cooley*, 985 F. Supp. 665, 673 (S.D. Miss. 1996).

denied, at least in part, based on the Recommendations Warranty. Therefore, the Court will limit Interrogatory No. 13 to lawsuits filed against insureds regarding claims on marine insurance policies Concept underwrote for Clear Spring denied, at least in part, based on an insured's alleged failure to meet the recommendations provision in a policy. The Court will limit Interrogatory No. 14 to default judgments Clear Spring received in lawsuits filed against insureds regarding claims on marine insurance policies Concept underwrote for Clear Spring denied, at least in part, based on an insured's alleged failure to meet the recommendations provision in a policy. Finally, the Court will limit Interrogatory No. 17 to every case, including the forum, case number, and disposition of the case, that Clear Spring is or has been in with an insured who made a claim on a marine insurance policy Concept underwrote for Clear Spring while Concept served as Clear Spring's underwriting agent, regardless of who filed the lawsuit, where the claim was denied, at least in part, based on an insured's alleged failure to meet the recommendations provision in a policy.

Therefore, Arch Nemesis's motion to compel is granted as it pertains to Interrogatory Nos. 13, 14, and 17, subject to the above limitations.

### E. Request for Production No. 13

Clear Spring argues the Court should deny Arch Nemesis's Motion to Compel with respect to Request for Production No. 13 because the documents exchanged between Clear Spring and Concept as to why Concept no longer serves as Clear Spring's agent are irrelevant to Arch Nemesis's claims. Arch Nemesis disagrees.

The Court finds Arch Nemesis's request for the documents exchanged between Clear Spring and Concept as to why Concept no longer serves as Clear Spring's agent is not relevant on its face, as it is not clear how the communications between Concept and Clear Spring regarding

16

the end of their collaboration could prove or disprove Arch Nemesis's claims. Therefore, the burden is on Arch Nemesis to show the relevancy of the request. Arch Nemesis states, "information relating to the termination of the service agreement between Clear Spring and Concept is potentially highly relevant. Even Mr. Usher admits that Clear Spring got out of the marine insurer market because it 'w[as]n't 100 percent happy about continuing writing yacht insurance.'"[35] The Court is not convinced by Arch Nemesis's argument. Arch Nemesis fails to make a connection between the requested information and its claims in this case and therefore has not met its burden to show relevancy. Thus, the Court will sustain the relevance objection and deny Arch Nemesis's motion to compel with respect to Request for Production No. 13.

**IT IS THEREFORE ORDERED** that Arch Nemesis's Motion to Compel Discovery (ECF No. 176) is **GRANTED in part and DENIED in part.** The motion is granted as to Arch Nemesis's Interrogatory Nos. 9, 11, 12 (as limited above), 13 (as limited above), 14 (as limited above), and 17 (as limited above); and denied as to Arch Nemesis's Interrogatory No. 10 and RFP No. 13.

**IT IS FURTHER ORDERED** that **within fourteen (14) days** from the date of this Memorandum and Order, Clear Spring shall provide responses to Arch Nemesis's Interrogatory Nos. 9, 11, 12, 13, 14, and 17, subject to the further limitations set out above.

**IT IS SO ORDERED.**

Dated this 10th day of September, 2024.

_____
Teresa J. James
U. S. Magistrate Judge

---

[35] ECF No. 176 at 7.